**Roy TAYLOR, Petitioner,**

v.

**John SABOURIN, Superintendent, Bare Hill Correctional Facility, Respondent.**

**No. 00–CV–3124 (JBW).**

United States District Court, E.D. New York.

May 19, 2003.

Roy Taylor, Pike County Correctional Facility, Lords Valley, PA, Pro se.

Diane R. Eisner, District Attorney of Kings County, Brooklyn, NY, for Respondent.

JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus pursuant to section 2254 of Title 28 of the United States Code is denied. No hearing was held on the matter due to petitioner's deportation on April 25, 2003.

I. *Factual Background*

On May 19, 1996, an undercover officer made a peephole purchase of crack cocaine at a basement apartment in Brooklyn. The money used to purchase the drugs had been pre-recorded and marked with a fluorescent powder. Soon thereafter, a search warrant was executed at the premises. The search revealed 166 bags of crack cocaine hidden in the bathroom wall, over five thousand dollars in cash, and various drug paraphernalia. Petitioner and his nephew were arrested in the apartment. They were later charged in Kings County Indictment No. 6793/96 with one count of Criminal Sale of a Controlled Substance in the Third Degree and two counts of Criminal Possession of a Controlled Substance in the Third Degree. *See* Affidavit in Opposition to Petition for a Writ of Habeas Corpus, at ¶ 5.

On May 8, 1997, following a jury trial, petitioner was convicted of Criminal Sale

of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree. On May 22, 1997, judgment was entered and petitioner was sentenced to concurrent terms of imprisonment of seven to twenty-one years on each of the two counts. On the same day, petitioner pled guilty to Criminal Possession of a Controlled Substance in the Third Degree in full satisfaction of Kings County Indictment No. 14705/96. (Respondent erroneously refers to the indictment as "14705/06.") That indictment charged that on November 18, 1996, in front of 930 Halsey Street in Brooklyn, petitioner possessed a quantity of crack cocaine with the intent to sell it. *See* May 22, 1997 Transcript ("Tr."), at 703–04. With respect to Indictment No. 14705/96, Petitioner was sentenced to five to fifteen years, to run concurrently with his seven to twenty-one year sentence on Indictment No. 6793/96. *See id.* at 718–19.

Petitioner filed an appeal with respect to the charges in Indictment No. 6793/96 and a conditional appeal with respect to his guilty plea in Indictment No. 14705/96 (petitioner's appeal arguments are examined in detail below). The Appellate Division, Second Department, denied all appeals and affirmed the judgments. *See People v. Taylor*, 265 A.D.2d 510, 696 N.Y.S.2d 710 (2d Dep't 1999).

Petitioner sought leave to appeal to the New York Court of Appeals. By Certificate dated December 30, 1999, petitioner's application was denied (Bellacosa, J.).

## II.  *Habeas Corpus Claims*

Petitioner's habeas corpus petition is dated May 23, 2000 and is timely. *See* 28 U.S.C. § 2244(d)(1). His petition is based on the following five grounds: (1) the trial court violated petitioner's due process and equal protection rights by instructing jurors that they should participate in the deliberations and discuss the evidence; (2) the trial court violated petitioner's Fifth Amendment rights by compelling petitioner to provide a voice exemplar; (3) petitioner's due process rights were violated because the verdict was against the weight of the evidence; and (4) petitioner's guilty plea in Indictment No. 14705/96 was involuntary.

■ Petitioner also challenges his sentence as excessive and claims that his presence in an area in which drugs were found was insufficient to establish constructive possession of cocaine. However, neither of these two arguments is made in Section 12 of the pre-printed habeas corpus petition, which asks petitioners to enumerate the facts supporting their contentions. Respondent fails to address both issues in his opposition brief, nor does petitioner in his traverse brief. Consequently, the court treats these arguments as abandoned. Regardless, the court holds that petitioner's arguments on both issues lack merit for substantially the same reasons as set forth in respondent's Appellate Division brief at pages 18–22.

## III.  *Legal Standards*

■ Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). An "adjudication on the merits" is a "substantive, rather than a proce-

dural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002).

■ A preliminary question is whether the merits of petitioner's arguments were addressed by the state court. After stating that Taylor was appealing a jury conviction in Indictment No. 6793/96 and a conviction by guilty plea in Indictment No. 14705/96, the Appellate Division delivered a brief opinion:

> Viewing the evidence adduced at the trial of Indictment No. 6793/96 in the light most favorable to the prosecution (*see, People v. Contes*, 60 N.Y.2d 620, 467 N.Y.S.2d 349, 454 N.E.2d 932), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was

not against the weight of the evidence (*see,* CPL 470.15[5] ).

The sentences imposed were not excessive (*see, People v. Suitte*, 90 A.D.2d 80, 455 N.Y.S.2d 675). The defendant's remaining contentions are either unpreserved for appellate review or without merit.

*People v. Taylor*, 265 A.D.2d 510, 696 N.Y.S.2d 710–11 (2d Dep't 1999). Although the court explicitly addressed petitioner's argument with regard to the weight of evidence, it disposed of his other claims merely by stating that they were either unpreserved or without merit. Notwithstanding the brief nature of the decision, "[t]he fact that a state court decision on the merits is cursory or summary does not vitiate the fact that the issue was adjudicated for purposes of AEDPA." *Francolino v. Kuhlman*, 224 F.Supp.2d 615, 625–26 (S.D.N.Y.2002). Indeed, "[n]othing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process. Nowhere does the statute make reference to the state court's process of reasoning." *Id.* at 626 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001)).

### IV. Claims

#### A. Improper Jury Instruction

Petitioner claims that the trial court gave an improper instructions to jury members regarding their responsibility to participate in the deliberations. Petitioner cites two specific instances in which the trial court gave what he believes to be objectionable instructions. The first instance occurred during the *voir dire:*

> Court: Can you promise the defendants and the People that you're going to participate in the deliberations, speak your voice based on the evidence, keep an open mind, and listen to the views of the other jurors?

May 5, 1997 Tr., at 169–70. Petitioner's counsel made no objection to the instruction at the time. The second instance occurred during the trial court's preliminary instructions to the jury:

> Court: You must reach your conclusions and your ultimate decision after having heard all the evidence, the summations, and my instructions to you on the law. And then only after discussing the views of each other in deliberations with other members of the jury during your final deliberations will you reach your verdict.

May 5, 1997 Tr., at 230. Again, petitioner's counsel made no objection to the instructions at the time.

As a preliminary matter, it would appear that petitioner's claim is procedurally barred because the trial court's instructions were not objected to at the time. This argument was made by respondent before the Appellate Division. The Appellate Division in turn, after touching on the weight of the evidence supporting petitioner's conviction, dismissed petitioner's remaining claims as unpreserved or meritless. Because this claim is the only one which respondent argued was unpreserved, it would be fair to assume that the Appellate Division's statement concerning unpreserved claims related to this argument. If so, the claim is procedurally barred.

Whether barred or not, the claim lacks merit. Petitioner's argument, set forth in greater detail in his brief before the Appellate Division, Second Department, is that the law places no affirmative duty on jurors to explain or justify why they agree or disagree with other jurors. According to petitioner, placing such an affirmative duty on jurors has a chilling effect during deliberations and improperly compels jurors to give the other jurors an explanation as to why they view the case a particular way.

As a general rule, "[a] jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974). Assuming *arguendo* that the jury instruction implicates a constitutional right, petitioner has failed to show that the trial court's instruction was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). An examination of Supreme Court precedent indicates that the Court has explicitly rejected petitioner's argument. For example, in *Lowenfield v. Phelps*, 484 U.S. 231, 235, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the Court held that it is appropriate to charge a jury that "when [it] enter[s] the jury room it is [the jurors'] duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if [the jurors] can do so." Relying on *Lowenfield* and other Supreme Court decisions, the Second Circuit recently held that "[it] is well-settled that jurors have a duty to deliberate." *United States v. Baker*, 262 F.3d 124, 130 (2d Cir.2001). In light of the foregoing, petitioner's claim for habeas relief based on the allegedly defective jury instruction must be rejected.

## B. Voice Exemplar

Petitioner's second argument is that his Fifth Amendment rights were violated when he was compelled to give a voice exemplar. Because the drug sale was conducted through a peephole, the police were unable to see the seller's face but heard a male Jamaican voice. At trial, petitioner was told to read the following sentence to the jury: "Public school students will

share an extra [$]15 million in new arts instructions under election-year efforts planned by Mayor Giuliani." Petitioner's Appellate Division Brief, at 46.

█ Although this issue was raised on direct appeal, petitioner's argument was based on state rather than federal or constitutional grounds. Thus, petitioner's brief before the Appellate Division noted that the trial court had "correctly surmised that the Fifth Amendment did not prohibit the People from requiring the appellant to give an exemplar of his voice." *Id.* at 47–48. Petitioner's concession that the Fifth Amendment countenances the compelled production of a voice exemplar is correct. *See, e.g., Doe v. United States,* 487 U.S. 201, 207, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988); *United States v. Dionisio,* 410 U.S. 1, 6–7, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). In this case, petitioner was compelled to read a sentence from an innocuous news clipping. A Fifth Amendment violation might have been raised had petitioner been compelled to read a statement implicating his guilt in the crime.

Petitioner's argument on appeal was that while the admission of a voice exemplar was not prohibited *per se* by the Fifth Amendment, the trial court should have excluded the exemplar because its prejudicial effect outweighed its probative value. Whatever the merit of this argument, it is one based on state laws of evidence rather than the Constitution or federal law. *See, e.g., Underwood v. Kelly,* 692 F.Supp. 146, 150 (E.D.N.Y.1988), *aff'd* 875 F.2d 857 (2d Cir.1989) ("Generally, erroneous evidentiary rulings by a state trial court do not constitute a basis upon which a writ of habeas corpus can be issued."). Petitioner conceded that the admission of the voice exemplar was consistent with the Fifth Amendment and federal law. Consequent-

ly, he has failed to preserve a federal claim for habeas corpus purposes.

Assuming *arguendo* that the claim is not procedurally barred, its merit was rejected by the Appellate Division. Nothing suggests that this holding was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, nor is this court aware of any decision or rationale that would support petitioner's claim.

█ Petitioner's claim also lacks merit because he fails to demonstrate prejudice. The voice exemplar was only one piece of strong evidence tying petitioner to the crime. Far more significant than his voice was his presence in the apartment where drugs were found, his possession of a prerecorded, marked bill used by the undercover officer to buy the drugs, and the presence of the fluorescent marking powder on his hand.

In light of the foregoing, petitioner's claim concerning the voice exemplar is meritless.

## C. Weight of the Evidence

Petitioner alleges that his due process and equal protection rights were violated because he was convicted against the weight of the evidence. He argues that he was arrested in his nephew's apartment and that no drugs or drug paraphernalia were found in his apartment. He speculates that there could be innocent explanations for the fact that he was found with a prerecorded five-dollar bill and that traces of the fluorescent "clue spray" were found on his hands. He concludes that he was "convicted for no other reason than because he was at the scene and had a Jamaican accent." Habeas Corpus Petition, at 6 (continuation).

The Appellate Division rejected petitioner's argument, stating that when the evi-

dence in the case is viewed in the light most favorable to the prosecution, it "was legally sufficient to establish the [petitioner's] guilt beyond a reasonable doubt." *People v. Taylor*, 265 A.D.2d 510, 696 N.Y.S.2d 710 (2d Dep't 1999). On this basis, it concluded that "the verdict of guilt was not against the weight of the evidence." Because the Appellate Division has addressed (and rejected) this claim on the merits, this court may only grant habeas corpus relief if the state court's decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

As the Appellate Division noted, the relevant standard is "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). The court has reviewed the trial court transcript and finds that the evidence presented at trial was sufficient to sustain a conviction. The trial included testimony that a drug buy had been conducted by undercover officers using pre-recorded bills sprayed with fluorescent "clue spray"; that the dwelling was under surveillance until the arrest team arrived; that petitioner had the pre-recorded bill used in the drug buy operation in his possession; and that petitioner had fluorescent spray on his hands.

In his petition and traverse, petitioner conjectures on various innocuous ways in which he could have gotten the "clue spray" on his hands and how he could have come to possess the prerecorded five-dollar bill used in the drug buy. That kind of "speculation" was for the jury. Petitioner is not entitled to any presumption in his favor. Instead, all evidence must be viewed in the light most favorable to the prosecution.

While respondent's characterization of the evidence against petitioner as "overwhelming" might be overblown, the evidence was sufficient for a rational juror to have found the essential elements of the crime beyond a reasonable doubt. Respondent's Appellate Division Brief, at 26. The court notes that because the Appellate Division already addressed this issue on the merits, its findings are entitled to deference. In no sense was its determination on the weight of the evidence at trial contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioner's claim of insufficient evidence must be rejected.

### D. Guilty Plea

Petitioner argues that his guilty plea to Indictment No. 14705/96 was not given voluntarily because "there was no choice but to accept the 'offer' rather than face a certain conviction with a consecutive longer sentence after an unfair trial with violations occuring [sic] similar to those in the first trial." Habeas Petition, at 6. In his traverse, petitioner states that "[i]n the event that the court chooses not to grant Habeas relief pursuant to the above, then petitioner concedes that this final point will be waived for review at that time as well." In light of the court's rejection of petitioner's arguments, *infra*, petitioner has waived his argument concerning his guilty plea in Indictment No. 14705/96. In any event, it has no substantive merit.

### V. *Conclusion*

The petition for a writ of habeas corpus is denied. A certificate of appealability is not granted as to any issue.

SO ORDERED.